Okay, before you, you have Justice Mary Ellen Coghlan, Justice Aurelia Puczynski, and myself, Justice James Fitzgerald Smith. The case is Chrysula Dana v. Great Northern Insurance Company, 123-00, I mean, sorry, 0224. Our basic procedure is the appellant will go first and has his 10 or 15 minutes. We usually do not interrupt unless you go off on a tangent. And then we ask questions, and then it's the other side that gets the same opportunity, and then the closing. With that, I guess we can proceed. Thank you, Your Honor. If I may please the court and counsel, I represent the appellant, Great Northern Insurance Company. This is an appeal from the trial court's granting of a motion for summary judgment. It was based on a stipulation of facts that opposing counsel and I drew up because we did not believe that a trier fact would find differently. So we saved ourselves some time and stipulated to that. But the question that's presented to this court is whether the trial court properly interpreted the misappropriation exclusion of a valuable articles policy insuring the appellant and her former husband. So it's Chrysula Dana and George Dana was her husband. She had a diamond ring that was given to her before they got married. You don't have to go into the facts. We pretty much know them in that part. So we just need really your presentation of the law and how you want to deal with that. Well, Your Honor, it's my belief we should get right to the point. And if you've read the briefs, the point is quite obvious. Our dispute is really whether the misappropriation clause, as it's set forth in this policy. Whether that's subject to what they're calling and what the trial court called the innocent insured exclusion. I'm sure the court's well aware that the West Bend against Salimi court, the economy, fire and casualty against Warren decision. They held that if if if you could interpret an intentional act exclusion or another exclusion, which would preclude coverage. For the misrepresentation of one insured that unless the policy clearly stated that excluded. All insureds, the innocent insured as a matter of interpretation would be covered, that there must be a clear statement excluding. The innocent insured that the rationale for that, by the way, which is set forth in the Aurelius case where they took a look at a different policy. What the previous courts had looked at and said, well, this clearly excludes coverage. But the rationale behind it wasn't that you couldn't preclude an innocent insured from coverage. It's just that you have to do it based on the reasonable expectations of the insured. And the exact quote of the Aurelius case is. A person would not have understood. That the wrongdoing of a co insured would be imputed to him. Well. If you look at the policy. The first several exclusions, one is potential acts exclusion, which it's been argued about, but it was never asserted by my client as a reason for denial. Right under this misappropriation clause, and there's a series of other. Exclusions and they all start the same way. It's saying there is no coverage. You know, for these types of losses. Of course, this one says. It is exact. We do not cover any loss caused by the taking or other misappropriation. By or directed by a person named in the coverage summary. Of course, there's no dispute that for both. George and Chris Dana. Are named insurance and they're identified in the coverage summary. The trial court. In its order determined that the policy and she did a nice job of. Summarizing and says the misappropriation clause. Excludes coverage where one of the insurance took or otherwise misappropriated property. And I think it should end from another insured and. Because you can't have a loss and less than insured is missing something or has something damage. There is no public policy. And there is no reason to graft. An innocent insured exception into a misappropriation clause. The. By doing so, you literally obliterate the clause. And, of course, there's a. Can of statutory construction that you should not interpret a clause in such a way as to render it meaningless, which this would because. No, one's imputing misconduct. From one insurance, you'd have precluding coverage for an insured because another insured did something wrong. In this case. It doesn't cover the event where one insured takes property from another, because if there was coverage for the innocent insured. Or, in other words, the victim of the taking. The clause would never have effect. And the obvious purpose of a misappropriation clause. Is insurance companies don't want to get involved in nor should. Insurance have to pay more money. To cover events where one insurance taking property from another. That's just not the type of loss. It's contemplated by this type of policy. By the way, under the earliest case. One of the things that it notes at page 973 is that. The same rules of construction apply. You should construe the policy as a whole. And, of course, I've cited numerous cases that say you shouldn't interpret a clause in such a way as to render it meaningless. I don't believe as counsel has argued that you can interpret. I don't believe that you can interpret a clause in such a way as to render it meaningless. I think that it's important for. Salimi Warren and its progeny. To create. A rule that there must always be an innocent insured. Exclusion in fact, really said exactly the opposite. No, we just got to make it clear. There's no coverage. But in this case, it is clear there's no coverage. In fact. The judge found that the clause was unambiguous. And it clearly excludes. What one insured takes property from another. That's clearly what happened here. Well. There is a third possibility. I don't think that's relevant to this appeal. Well, it could be depending on how you decide the case. Of course. There is what I would consider a remote possibility that someone else could have taken it. Like, for example, if. The pawn shop where, where Chris had pointed. Much earlier had substituted that would clearly be a covered loss. That's a, that's a step by a 3rd party. There are other possible. Ways that this range have been taken. The problem, of course, is that all the evidence. That cited in both opposing counsel's brief in our brief. Makes it pretty clear that. There was a stated intent by George Dana that she would never get her ring back. He had opportunity, which means time. To substitute the diamond. For a full diamond. She had. Motive to do so. And in fact, the 2nd. That the court ordered the ring be returned and it was finally returned. It was discovered that there had been a substitution. But if. Opposing counsel wants to argue that no, there's, there's, there's a reasonable chance that we could convince the jury that. It probably was. The pawn shop or some 1 of the attorneys or 1 of the family members took the ring in a short time. They had it. That's fine. That that buys us a jury trial. So, the question then finally comes down to, is there a public policy? Is there some reason. That you shouldn't graft the innocent insured concept on to. And misappropriation clause, and, of course, the misappropriation clause can only apply when there's an innocent insurance. So what the real question is, is there a public policy that. Should preclude a policy from ever having a misappropriation clause. Opposing counsel has pointed out and I certainly agree. I found no case and we both, I think of search diligently. For any Illinois case, it interprets the misappropriation clause in this context. We have not, but there is a New Jersey case that we cited length and quoted length in our brief. That explains exactly the points I'm making here that if you look at these 2 exclusions, it's clear. Why 1 actually carves out an innocent insured. Exception, and the other does not and, of course, you cannot, because if you carve out an innocent insured exception, the exception would swallow the exclusion and there would it would make no sense. There are arguments. That have been made by opposing counsel that misappropriation. The use of that term in conjunction with taking somehow qualifies the word taking the trial court did not buy it, but I would know. That if you look at some of the dictionary definitions, like, for example, the new Oxford Merriam Webster definition, which was cited at C199 of the record. Definition is to appropriate wrongly as by theft. So, this is clearly was it taking it clearly was. 1 insured stealing something from another insurance. She clearly had the unqualified right to it. There are other arguments that they made about our investigation being incomplete, but that I don't think that's in front of the court because you can argue that to a jury. I see that all the time as you can imagine in my position and cases I handled, but. That has nothing to do with the trial court's opinion has nothing to do with the legal position of this case and the issues present to this court that can all be argued back in the trial court. Because if the court agrees that this is an ambiguous clause as a trial court found, and the innocent insured exception does not need to be grafted on a misappropriation clause. Then it is certainly opposing counsel's right to have a jury decide if he wants whether or not someone other than George Dana took the ring. There's also an issue of whether she took the ring. He not with much evidence, but he suggested George Dan suggested that maybe Chris substituted it. To set him up in the divorce. That's not before us. So, let's not waste our time. Agreed. So, judge, that brings me to the end of my argument. There is no reason to engraft this, this instant insured rule of interpretation on to a misrepresentation clause. There's no public policy that would require other insurance to pay for this type of loss. Because, as you can imagine, there's a lot of reasons for that. And so I think the court should reverse that part of the trial court's ruling and send us back to the trial court for further proceedings. I just have 1 question. I read this policy and I say, the insurance company didn't do a real good job of nailing down all the evidence. It left several doors open, you know, it just, it left doors for all sorts of lawsuits. Uh, could you give me an example? Your honor? I'm not sure. Yes, just the 1 right here. I mean, I can't see when you ensure 2 people that there couldn't come up just what did happen. And many other things when you're ensuring 2 people in a divorce occurs. Well, my argument, your honor, is that you can always add more language and more words to try and make something even clearer than it is. But it's specifically states there's no coverage. When 1 insured takes property from another, the trial judge so found. And the entire innocent insured doctrine is based upon the reasonable expectations of the insured. But if you read this policy, especially if you read the intentional act clause, and then the next clause, of course, is a misappropriation clause. And then there's several more beyond it, all which say there is no coverage in this event. You couldn't reasonably expect that to mean that. Well, but I wouldn't be covered because I didn't take it. Otherwise, if you read that, there would be no, it would have no meaning as I've argued. Other questions. Wouldn't it be a lot easier just to put language. In the exclusion that says that exactly what you're arguing here that in the event of wrongdoing by 1 of the insured, there's no. Coverage to either ensure. I mean, I think that's basically what the judge found. Right? Well, she didn't. What she did find. She found that the innocent insured doctrine applied because your policy did not clearly say otherwise. Specifically, she said when the policy does not contain a clear statement. That the policy is void to all insurance. I'm looking right at the order. I know exactly what she said. And why is she wrong? Because you don't need to add additional language. In a misappropriation clause, because. There cannot be an innocent insured. When 1 takes property from another, otherwise, the clause would have no meaning. And I think it's reasonable that if a person read this. They would say, well, there's no coverage if. Someone else named in the policy takes my property. Because that's literally what it says, you know, just taking. What you're saying, what is the purpose of this policy? Then nobody wins if somebody gets a divorce. And this event occurs, and these people have been paying money all these years. So, you're going to give them back their money. Well, judge what they're paying for, of course. Is coverage for their valuable articles. This is, of course, attached to a. If anyone takes their pain for risks that are covered under the policy. The question, of course, is this a risk covered in the policy? And the answer is they're paying for, for example. If the pawn shop substituted the diamond and stuck in a synthetic one. Yes, that would be covered. If the lawyers took the ring. Yes, it would be covered as long as it wasn't at the direction of their clients. And a family members did that. Yes, it would be covered. As long as it wasn't at the direction. Of one of the people covered in the policy. So there's they're, they're paying for the risks that are covered by the policy. And, of course, if they don't materialize, but this is, this is one of the risks. That the policy is clearly trying to not pay for, because it's going to increase. The cost of the policy and the question is, is this the type of. Of loss that a policy holder. Should want to cover and there's all sorts of exclusions and policies affected. The loss in front of us, or before the court. It's not covered doesn't make the policy value list. All the other risks are covered. Any other questions. All right. I see you may go forward. They please the court coast of diamond on behalf of cross appellant. Your honor is there. There are two main issues before the court today. First was great Northern's application of the misappropriation exclusion appropriate given the circumstances. And two, if so, does the innocent insured doctrine applied to protect innocent insurance like. First, I'd like to address the application of the misappropriation exclusion. The trial court in their October 6 order specifically stated, regardless of the plain ordinary meaning of misappropriation. This policy explicitly states the clause applies when there's a taking or other misappropriation by an insured. Black letter Illinois insurance law is clear that when a term is not defined in a policy. The court should apply its plain ordinary meaning in that circumstance. Give it upon a simple reading of the great Northern policy. In this case, there is not a definition of misappropriation. Therefore, the plain and ordinary meaning should be applied in this scenario. The dictionary definition of misappropriation is to steal something you've been entrusted to take care of and use it for your own good. Every single Illinois case that I could find that discuss the term misappropriation dealt with the loss of property that was first entrusted to an individual prior to a wrongdoing. Some examples of those cases were misappropriation of client funds, misappropriation of trade secrets, misappropriation of intellectual property. I could not find one case that applied the term misappropriation in the way that great Northern is attempting to apply it in this case. Great Northern argues that the term misappropriation is, even if the term misappropriation is ambiguous, the term taking within that exclusion is not. The trial court agreed with this logic in their October 6, 2022 order. However, both great Northern and the trial court failed to realize that the word taking should be read in the context of the exclusion, which is titled misappropriation. If it's not, then what is the difference between an intentional act taking and a misappropriation taking? Would the policy just then have two nearly identical exclusions? It only makes logical sense that the misappropriation exclusion applies to scenarios where the property was first entrusted to somebody, and then there was a wrongful taking of that property. Not just that there was a taking of the property. In this case, Chrysoula never entrusted the ring to George Dana or anyone else, so there cannot be a misappropriation under the undisputed facts of this case. Therefore, the great Northern misappropriation exclusion is inapplicable and appears to be an attempt on great Northern's behalf to circumvent the innocent insured protections clearly stated in the intentional acts exclusion, which are required by the Illinois Domestic Violence Act. If great Northern truly wanted to limit coverage as a result of domestic disputes and abuse between coinsurance, it should have clearly stated its intent in the policy as required by Illinois law. Council stated numerous times that misappropriation clause is obvious that it's meant to do this, or it's clear that it's meant to do this. But when you read the actual misappropriation clause, it's not clear or obvious that it's meant to exclude coverage as to all insured, if one insured was responsible for the misappropriation of the property. Which leads me to my next point. Even if the misappropriation exclusion is applicable, Illinois law is well settled that innocent insured like Chrysoula will be afforded coverage if the policy does not contain specific language excluding coverage as to all insured for the wrongdoing of one insured. The first district in Warren established and created the Illinois common law innocent insured doctrine after canvassing other jurisdictions in analyzing the matter. The Warren court, as you know, ultimately held that the wrongdoing of a coinsured could not be imputed onto an innocent insured unless the insurer makes the terms expressed in that regard. Since the Warren court's holding, numerous other Illinois courts have uniformly applied the innocent insured doctrine to policy exclusions. Cases such as Salemi, Maselli, Wysick all applied it in a similar manner. The trial court in finding that the innocent insured doctrine applied in this case did not deviate from the well settled Illinois law and specifically stated that based on the holding in Salemi, if Great Northern intended for the wrongdoing of one insured to bar recovery for all insured, it should have expressly stated its intent in the policy. The subject Great Northern policy contains no such language. Great Northern also argues that well established Illinois law on the application of innocent insured doctrine should not apply specifically to its misappropriation exclusion. However, Great Northern cites no authority to support this contention and actually admits that there's no Illinois case on point. Great Northern also ignores the Illinois Supreme Court's ruling in Tozzolino and Turpinus, which specifically states that the Illinois innocent insured doctrine should be applied to policy exclusions generally. No Illinois court has ever held that the innocent insured doctrine is inapplicable to misappropriation exclusions. Illinois law requires the courts to consider the policyholders reasonable expectations as to whether a co-insured's wrongdoings would be imputed onto them. Upon a simple reading of the Great Northern policy, it states it will cover a loss if it's a result of pattern of domestic violence. Any reasonable person reading this policy would have a reasonable expectation that Crisulo would be covered for the loss of her ring, given the circumstances and facts in this case. If Great Northern truly intended for such loss to be excluded, then it should have expressly stated its intent in the policy as required by Illinois law, and it did not do so. Therefore, Crisulo should be afforded coverage for a loss as correctly held by the trial court on October 6, 2022. In addition, in counsel's opening argument, he refers to the Aurelius case numerous times and kind of uses that as his authority that the innocent insured doctrine should not apply to the misappropriation clause. The Aurelius case is different than all the other cases that I've stated in that the court found that the language was sufficient and did state clearly express its intent to limit coverage as to all insureds. The actual language states, quote, we will not pay for you or any other insured for this loss, end quote. With that, Your Honors, I ask that the court overturn the trial court's ruling as to the ambiguousness of the misappropriation clause and affirm its judgment as to the application of the innocent insured doctrine, given the circumstances. Thank you. Any questions? Hearing no questions, I guess, James, you can do your closing. Thank you, Your Honor. The argument that somehow one definition in a dictionary of misappropriation must require the court to ignore the disjunctive or, which has been interpreted by the court to mean by the appellate courts in Illinois to mean either or. And it completely ignored the word taking. And this is simply contrary to the canons of statutory construction. The argument about the Domestic Violence Act, we've addressed that in the. In our briefs at length. But they never pled that she was the and that would be a question of fact, I guess, for the trial court as to whether she was. That this was part of a pattern of domestic violence and whether he had been prosecuted, there are three requirements under the. Innocent insured clause that's required by the Department of Insurance for an intentional X clause, by the way, this obviously is policy was reviewed by the Department of Insurance. The idea that you have to put that on a misappropriation clause, I think is contrary. Common sense. The idea that the Supreme Court, first of all. The two casino case, which to which counsel referred that is not that does not involve a policy exclusion. They simply made a comment that, hey, these are typically applied in this case. But the before it was the question of whether the insurance company, which was the could we send its policy based on a misrepresentation in the inception or to get the policy issue. And the court said, no, there's no innocent insured. If one person didn't make the misrepresentation, but another did, there's no coverage. So, that's there can't be a holding in that case related to this issue because it wasn't before the court. It's clearly dicta and it's clearly an observation about when the doctrine typically applies. There is no public policy reason. There is no. Reason other than to ignore the doctrine of interpretation that you should interpret a clause to have meaning. Because if this doesn't apply, if the exclusion doesn't apply this case, it never applies and therefore it has no effect. And what the earliest case said was you should look at all. I agree that the language is different, but they were talking about the intentional act clause. The question is whether you would have to graft that concept on to every exclusion in the policy, including 1, like, the misrepresentation 1 to which if applied would render it meaningless. And that's why this court should reverse the truck or. Thank you any, any questions. Well, thank you. This is this is kind of an interesting case because it's just like Illinois never address the issue. So, it may require the author to try and make this into an opinion. So we'll see. Thank you both. The briefs are well done and kind of fun to read. So we'll let, you know, as soon as we brainstorm it. Thank you. Thank you.